FILED IN CHAMBERS
U.S.D.C.  Atlanta

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEB 1 9 2008

By: JAMES N. HATTEN, Clerk

Deputy Clerk

TOMCO² EQUIPMENT COMPANY,

        Plaintiff,

v.

                                          CIVIL ACTION NO.

                                          1:06-CV-2559

SOUTHEASTERN AGRI-SYSTEMS,
INC.,

        Defendant.

## ORDER and OPINION

This case is presently before the Court on plaintiff's Motion for Leave to Amend ("Pl.'s Mot. to Am.") [27] and defendant's Motion to Stay Proceedings ("Def.'s Mot. to Stay") [69].  The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that both plaintiff's Motion for Leave to Amend [27] and defendant's Motion to Stay Proceedings [69] should be **GRANTED**.

## BACKGROUND

During the period relevant to this litigation, Tomco² ("plaintiff") and Southeastern Agri-Systems, Inc. ("Southeastern" or "defendant") competed in the poultry processing industry.[1]  Plaintiff

_____

    [1]  Defendant maintains that it is no longer involved in this business. (Def.'s Mot. to Stay [69] at p. 10.)

AO 72A
(Rev.8/82)

developed a chlorination system involving the creation of hypochlorous acid for use in controlling pathogens in poultry processing plants. (Pl.'s First Amended Complaint ("Am. Compl.") [2] at ¶¶ 1-10.) This system resulted in two patents: United States Patent No. 6,855,307 ("'307") and United States Patent 6,605,308 ("'308"). (*Id.*) The '307 patent involves a pressurized feeding system for introducing the hypochlorous acid into the fluid stream to clean the poultry. (Am. Compl. [2] at ¶ 10.) The '308 patent involves the pathogen management system used to introduce the hypochlorous acid stream to the poultry. (Am. Compl. [2] at ¶ 8.)

Plaintiff filed this patent infringement action on October 23, 2006. Plaintiff alleges that defendant has made, used, or sold apparatuses that infringe on plaintiff's patents '307 and '308. (Am. Compl. [2] at ¶¶ 9, 11.) This litigation ensued and the parties filed a joint preliminary report and discovery plan [21] on April 20, 2007. (Joint Preliminary Report and Discovery Plan ("Joint Discovery Plan") [21].) Two weeks after that filing, plaintiff filed its Motion for Leave to Amend the pleadings [27] to add three defendants to the case.[2] (Pl.'s Mot. to Am. [27].) Defendant objects to plaintiff's amendment. (Defendant's Response

---

[2] Plaintiff amended the first complaint soon after filing. (Am. Compl. [2].) However, plaintiff seeks to amend the complaint again with the current motion. (Pl.'s Mot. to Am. [27].)

in Opposition to Plaintiff's Motion to Amend Complaint ("Def.'s Resp. in Opp'n to Pl.'s Mot. to Am.") [32].)

On September 17, 2007, defendant filed a reexamination request with the United States Patent and Trademark Office ("PTO"). (Def.'s Mot. to Stay [69] at p. 1.) On December 10, 2007, the PTO granted defendant's request for an *inter partes* reexamination of plaintiff's patent '308. (Def.'s Notice of Granting *Inter Partes* Reexamination [87] at pp. 1-2.) Defendant claims that the request for reexamination is based on two pieces of highly relevant and material prior art that had not been considered by the PTO in its initial examination. (*See* Def.'s Mot. to Stay [69] at p. 2.) On the same day that it granted defendant's request for reexamination, the PTO preliminarily rejected all of the examined claims of plaintiff's patent. (Def.'s Notice of Granting Inter Partes Reexamination [87] at pp. 1-2.) Defendant is seeking a stay pending the results of the reexamination of patent '308.[3] (Def.'s Mot. to Stay [69].)

**I.  The Court grants plaintiff's Motion for Leave to Amend.**

Plaintiff seeks to amend its complaint to add three new defendants pursuant to Federal Rule of Civil Procedure 15(a). (Pl.'s Mot. to Am. [27] at p. 1-2.) The potential new defendants

---

[3]  Plaintiff argued initially that a stay was untimely and unwarranted, especially because the PTO had not accepted defendant's request for a reexamination. However, this concern is now clearly moot.

are: (1) the principal of the current defendant, Southeastern, (2) Wayne Farms, LLC, ("Wayne Farms"), which is a customer of Southeastern that plaintiff alleges is also infringing plaintiff's patents, and (3) Wayne Farms' principal. (*Id.*)

The Supreme Court has offered guidance as to the circumstances in which leave to amend should be granted. *Foman v. Davis*, 371 U.S. 178 (1962).

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.– the leave sought should, as the rules require, be 'freely given.'

*Id.* at 182.

Although it objects to plaintiff's Motion for Leave to Amend [27], defendant asserts no reason, such as bad faith or dilatory motive, that the Court should not grant plaintiff's request. (Def.'s Resp. in Opp'n to Pl.'s Mot. to Am. [32] at p. 2.) Defendant's only contention against permitting the amendment is that plaintiff knew of these people and this entity all along and is responsible for failing to add these parties earlier in the litigation. (*Id.*) Although defendant is correct that plaintiff did

4

know of the existence of these potential defendants, this is not a sufficient reason for the Court to deny plaintiff's request. *See Foman v. Davis*, 371 U.S. 178 (1962); Fed. R. Civ. P. 15(a).

First, plaintiff's request to amend was filed in a timely fashion, within the guidelines set down by the discovery plan and ratified by the Court. (*See* Joint Discovery Plan [21] at pp. 10-11; Scheduling Order [51] at p. 1.) Therefore, there has been no undue delay. In addition, prejudice to the opposing party, not the diligence of the moving party, is the crucial factor in determining whether to grant leave to amend. *See Foman v. Davis*, 371 U.S. 178 (1962); Charles Alan Wright & Arthur R. Miller, 6 Federal Practice and Procedure 2d §, 1487 at p. 1; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971); *U.S. v. Hougham*, 364 U.S. 310 (1960); *Smith v. Costa Lines, Inc.*, 97 F.R.D. 451 (D.C. Cal. 1983]. Defendant asserts no such prejudice here. Therefore, this Court will grant plaintiff's Motion for Leave to Amend [27], and it is hereby deemed filed as of the date hereof.

## II.   Staying Litigation Pending Reexamination

Reexamination allows the PTO to reconsider the validity of an existing patent. 35 U.S.C. §§ 301, et seq. Upon reexamination, the patent may be upheld, amended, or invalidated. *Id.* at § 307. There are two types of reexamination proceedings: *ex parte* and *inter partes*. An *inter partes* reexamination, in contrast to the *ex parte*,

reexamination, provides a third party the right to participate in the reexamination process. *See* 35 U.S.C. § 314. The results of the reexamination are thus binding on the third party requester in any subsequent or concurrent civil action. *Id.* at § 315(c). Therefore, here, defendant may not relitigate any issue addressed by the PTO. *See id.*

Congress created the *inter partes* review to provide an alternative method of resolving disputes, using the expertise of the PTO. H.Rep. No. 96-1307(I), at 4. *Inter partes* reexamination is intended to provide this review in an "efficient and relatively inexpensive manner." *Id.* As many courts have noted, "[o]ne purpose of the reexamination procedure is to eliminate trial of ... issue[s] ... or to facilitate trial of ... issue[s]." *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 615 (E.D. Tex. 2007)(quoting *Gould v. Control Laser Corp.*, 705 F.3d 1340, 1342 (Fed. Cir. 1983).

The Eastern District of Texas discusses many of the benefits provided by *inter partes* review that are consistent with those that Congress sought to provide. That court noted that upon an *inter partes* reexamination:

> [a]ll prior art presented to the Court will have been first considered by the PTO, with its particular
> expertise[;]
> Many discovery problems relating to prior art can be alleviated by the PTO examination[;]

6

> In those cases resulting in effective invalidity of
> the patent, the suit will likely be dismissed[;]
> The outcome of the reexamination may encourage a
> settlement without the further use of the Court[;]
> The record of reexamination would likely be entered
> at trial, thereby reducing the complexity and length
> of the litigation[;]
> Issues, defenses, and evidence will be more easily
> limited    in    pretrial    conferences    after    a
> reexamination[; and]
> The cost will likely be reduced both for the parties
> and the Court.

*Datatreasury Corp. v. Wells Fargo & Co.,* 490 F. Supp. 2d 749, 754

(E.D. Tex. 2006) (citing *Fisher Controls Co., Inc. v. Control*

*Components, Inc.,* 443 F.Supp. 581, 582 (S.D. Iowa 1977)).

Although there are many benefits provided by the *inter partes*

reexamination, the Court should not ignore the potential

difficulties. 35 U.S.C. § 302; *see Xerox Corp. v. 3COM Corp.*, 69 F.

Supp. 2d 404 (W.D.N.Y. 1999). It is important to consider the

possible length of the reexamination, which is likely to take over

one year. *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C.,*

*LLC*, 464 F. Supp. 2d 481, 485 (D. Md. 2006)(noting that the average

reexamination procedure lasts approximately 21 months). Granting a

stay for the duration of the reexamination may result in a

significant delay of plaintiff's case. *Id.* In addition, courts

often note that the reexamination process only considers the

validity of the patent with regard to prior art. 35 U.S.C. § 302.

The PTO will not analyze other infringement issues or other grounds

7

for invalidity.   35 U.S.C. §§ 301, 311(b)(2); *see Anascape*, 475 F.Supp.2d at 615.  Therefore, those issues may ultimately need to be addressed by the Court.

The final stay determination is discretionary.  Courts have the inherent power to control their own dockets, including the power to stay proceedings.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *Soverain*, 356 F.Supp. 2d at 662.  The question here is thus: will the benefits provided by staying the litigation outweigh the potential drawbacks?  When deciding whether to grant a stay, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date has been set.  *Xerox Corp. v. 3COM Corp.*, et al., 69 F. Supp.2d 404, 407 (W.D.N.Y. 1999).  The Court must weigh each factor and determine if a stay will serve the interests of justice.

**III.  Staying the litigation will not prejudice the parties.**

The Court first addresses whether granting a stay will cause prejudice to any of the parties.  *Xerox Corp. v. 3COM Corp.*, et al., 69 F. Supp.2d 404, 407 (W.D.N.Y. 1999).  Many parties opposing the stay in these situations do so because their discovery process will be made more difficult after the delay caused by reexamination.  For example, the court was concerned in *Anascape* that crucial witnesses

8

were more likely to be found if discovery were permitted to proceed without delay. *Anascape Ltd. v. Microsoft Corp.,* 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007). However, plaintiff asserts no such challenges here. There are no allegations that either party will have problems finding experts or witnesses after more time has passed. Furthermore, plaintiff and defendant filed a joint motion to put discovery on hold so that the new defendants can catch up with the litigation. *See supra* at pp. 3-4. Therefore, this is an appropriate time for a stay because the litigation will be on hold for a time, regardless of the outcome of this motion.

Plaintiff also argues that it will be prejudiced because it alleges that defendant induced others to similarly infringe on Tomco's patent. (Pl.'s Opp'n to Stay [74] at pp. 16-18.) Therefore, according to plaintiff, damages will "intensify" during a stay. (*Id.*) However, these are damages that can be remedied by money. In other words, "...the availability of money damages is sufficient to protect plaintiff from prejudice." *Datatreasury Corp. v. Wells Fargo & Co.,* 490 F. Supp. 2d 749, 752 (E.D. Tex. 2006). In addition, the original defendant is no longer in the acid chlorination online reprocessing industry, and therefore the damages that are alleged by plaintiff against the original defendant are most likely not increasing. (Def.'s Mot. to Stay [69] at p. 10.) Lastly, the simplification of the issues that the reexamination

9

should provide will hopefully alleviate any other prejudice experienced.

Prejudice may also arise when the party opposing the stay has other claims pending that are not dependent on the validity of the patent, but will nevertheless be put on hold during the stay. *See Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C., LLC, et al.*, 464 F. Supp. 2d 481 (D. Md. 2006); *Anascape Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007). However, this is not an issue here. All of plaintiff's claims surround the patents-in-suit, and therefore rest on the validity of the patent being reexamined. (*See* Am. Compl. [2].) Although there are two patents at issue and only one is being reexamined, that reexamination should shed significant light on the '307 patent infringement litigation. In addition, it would not make sense to bifurcate the trial for each patent because they are very closely related.

Defendant, on the other hand, has counterclaims that seem unrelated to the patent being reexamined. (Defendant's Answer to Plaintiff's Amended Complaint and Counterclaim ("Def.'s Answer and Countercl.") [7] at pp. 12-13.) These include claims for federal unfair competition, Georgia Deceptive Trade Practices, tortious interference with contract, and Walker Process antitrust violations. (*Id.*) However, as is discussed *infra* at pp. 13-15, almost all of these claims will be affected by the outcome of the reexamination.

AO 72A
(Rev.8/82)

In addition, if defendant is willing to postpone adjudication of its

own counterclaims, the Court will permit it to do so.

**IV.  Granting a stay for the duration of the reexamination will
    simplify the issues for trial.**

The second factor that courts consider when determining whether

to grant a stay is whether the issues will be simplified for trial

if a stay is granted. *Xerox Corp. v. 3COM Corp.*, et al., 69 F.

Supp.2d 404, 407 (W.D.N.Y. 1999). Many courts have noted in patent

reexamination cases that absent a stay, the parties

> may end up conducting a significantly wider scope
> of discovery than necessary, and the court may
> waste time examining the validity of claims which
> are modified or eliminated altogether during
> reexamination. Moreover, since the Court will need
> to interpret the pertinent claims of the patent at
> some point during this case, waiting until after
> the reexamination will provide this Court with the
> expertise of the PTO.

*Guthy-Renker,* 1998 WL 670240, 48 U.S.P.Q. at 1060-61 (citation

omitted). These are risks inherent in any situation where two

tribunals address the same issues. Some courts facing this

situation have found a stay inappropriate, while others have found

differently. *See Anascape Ltd. v. Microsoft Corp.*, 475 U.S. 2d 612

(E.D. Tex. 2007); *cf. Akzenta Paneele + Profile GmbH v. Unilin

Flooring N.C., LLC, et al.*, 464 F. Supp. 2d 481 (D. Md. 2006); *cf.

Tdata Inc. v. Aircraft Technical Publishers*, 2008 WL 77741 (S.D.

Ohio 2008)(granting stay). The Court here notes that although there

are other issues that will most likely need to be addressed after the reexamination, a stay is appropriate here.

First, the Court notes that an *inter partes* reexamination, in contrast to the *ex parte* reexamination, has great potential for simplifying issues. It has a *res judicata* effect, and it allows the court to consider the expertise of the PTO before making its own conclusions.   Because the *inter partes* review provides the third party the right to participate in the reexamination process, the results of the reexamination are binding on the third party requester.   35 U.S.C. §§ 314(b)(2), 315(c).   Therefore, the *inter partes* reexamination is very likely to simplify issues before this Court because the defendant cannot relitigate any of the issues determined by the PTO.   *Id.*   In addition, it seems wise to allow the PTO determine what effect, if any, the two prior art references have on this case.   "[T]he technical expertise provided by the reexamination proceeding will be helpful to the Court on any issues that remain."   *Datatreasury Corp. v. Wells Fargo & Co.,* 490 F.Supp.2d 749, 754 (E.D.Tex. 2006) (citing *Gould,* 705 F.2d at 1342).

Despite the *res judicata* effect that the PTO's examination will have, plaintiff argues that there will likely be little benefit from granting a stay during the reexamination because this Court and the PTO use different standards of review.   (Plaintiff's Response in Opposition to Defendant's Motion to Stay ("Pl.'s Opp'n to Mot. to

AO 72A
(Rev.8/82)

Stay") [74] at p. 12.)  However, this actually favors a stay rather

than discouraging one.  The Court is to presume that the patent is

valid, whereas the PTO presumes invalidity.  35 U.S.C. § 282;

*Kaufman Co., Inc. v. Lantech, Inc.*, 807 F.2d 970, 974 (Fed. Cir.

1986); *Ethicon, Inc. v. Quigg*,  849 F.2d 1422, 1427 (Fed. Cir.

1988).   Therefore, if the Court makes one decision using its

standard and the PTO finds differently using its more stringent

standard, then the Court's analysis was for naught on any issue that

overlaps.  The fact that the Court uses a more lenient standard than

does the PTO only makes it more likely that the Court's work will be

rendered moot.

Plaintiff  also  argues  that  the  majority  of  claims  in

reexaminations are upheld.  (Pl.'s Opp'n to Mot. to Stay [74] at pp.

12-13)(citing  *Akzenta*,  464  F.  Supp.  2d  at  483).   Therefore,

according to plaintiff, a stay is unnecessary here because the

chances of the patent being invalidated are low.  (*See id.*)

However, the Court disagrees.   First, no matter how low the

probability, the patent is still subject to nullification, which is

an important consideration.  Second, the patent claims are subject

to change, and the fact that the claims may very well be amended at

all favors a stay.  In order to determine whether the defendant has

a product or apparatus that infringes on plaintiff's patents, the

Court  compares  the  claims  of  plaintiff's  patents  with  the

13

defendant's challenged apparatus.   However, if the claims of plaintiff's patent are subject to rejection or are subject to change, it does not make sense for the Court to proceed.   *See Datatreasury,* 490 F.Supp. 2d at 755.  Again, if the Court makes a determination with regard to the original patent claim and the claim is changed, then the Court's analysis is for naught.  Therefore, although it is unlikely, statistically speaking, for the reexamination to result in the patent being invalidated in its entirety, "the possibility that some of the claims may change during reexamination... favors staying the case." *Soverain,* 356 F. Supp. 2d at 662.

Plaintiff also notes that the PTO's analysis for validity is significantly narrower than that in a district court.  (Pl.'s Opp'n to Stay [74] at p. 12.)  Plaintiff thus argues that all issues separate from the prior art will remain after the reexamination proceeding, and therefore the litigation should proceed.  (*Id.*); *see Datatreasury,* 490 F.Supp. 2d at 753.   To support this claim, plaintiff points to the Central District of California, which states that "when reexamination potentially will eliminate only one issue out of many, a stay is not warranted." *Imax Corp. v. In-Three, Inc.,* 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005).  Plaintiff claims here that defendant plans to introduce defenses and claims that will not be simplified by the reexamination, and it notes that there is

14

another patent at issue.  Therefore, according to plaintiff, a stay is not called for here.

Although many courts deny stays when the reexamination will not resolve all the issues in the litigation, *see Imax Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005); *Cognex Corp. v. Nat'l Instruments Corp.*, 2001 WL 34368283 (D. Del. 2001), the issues here almost universally depend on the existence and validity of the '308 patent claims.  Therefore, permitting the PTO to resolve that issue before proceeding with litigation will simplify the case for trial.  This is illustrated below.

Defendant's first defense is non-infringement.  (Def.'s Answer and Countercl. [7] at pp. 9-13.)   Non-infringement will be determined conclusively if the patent is found invalid by the PTO. *See Slip Track Systems, Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998)(stating that a stay is justified when "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.").  In addition, this Court's determination would likely need to change even if the patent claims are only amended.  Therefore, it makes more sense to permit the PTO to determine what affect the prior art has on the patent before proceeding with defendant's non-infringement defense.

15

Defendant's second defense is that plaintiff's patents are invalid. (Def.'s Answer and Countercl. [7] at pp. 9-13.) Clearly invalidity is also dependant on the PTO's analysis. If the PTO determines that the patent is invalid as against the prior art, then it is also invalid for the Court's purposes. However, if the PTO decides that plaintiff's patent is valid, this is one less issue that the Court will need to address. In addition, the claims of the patent will be finalized for this court's determination of infringement. Although defendant is asserting invalidity on grounds that the PTO will not consider in its reexamination, the issues are still likely to be simplified. See 35 U.S.C. §§ 301, 311(b)(2). For example, if the PTO finds the patent invalid based on the prior art, then the other grounds for invalidity will be moot.

Even defendant's claims that seem unrelated to the reexamination of patent '308 will be simplified by the outcome of the reexamination. For example, defendant maintains a defense of unenforceability for inequitable conduct. (Def.'s Answer and Countercl. [7] at pp. 13, 18-20.) This issue, like most others, will be simplified by the PTO's reexamination. Defendant's inequitable conduct allegation is based on plaintiff's nondisclosure of material prior art, which will clearly be decided by the PTO in its review. (Id.) If the PTO finds that the prior art that defendant asserts is irrelevant then plaintiff will most likely not

16

be guilty of not disclosing it.

Defendant also maintains a defense of unenforceability for patent misuse.  (*Id.* at pp. 9-13.)   This defense, too, depends on plaintiff's patent being valid.  Defendant claims in this defense that plaintiff is attempting to stifle legitimate competition by asserting rights in fraudulently obtained patents.  (*Id.*)  If the PTO upholds the patent, then plaintiff cannot be asserting rights in "fraudulently obtained patents," because they will conclusively be determined to have been legitimately obtained.  The last defense asserted by defendant is invalidity for failure to comply with 35 U.S.C. § 112, meaning that the patents contain inexact and confusing language.  (*See id.*)  However, even this claim will be meaningless if the patent is found invalid because of the prior existing art.

In fact, even most of the defendant's counterclaims depend on the reexamination, and will be simplified at trial by its outcome.   For example, defendant's claim for federal unfair competition is based, at least in part, on the allegation that plaintiff made fraudulent, public claims of inventorship with regard to both patent '307 and '308.  (Def.'s Answer and Countercl. [7] at pp. 22-24.)  If the PTO decides to uphold the patent as against the prior art, then the PTO will have determined that plaintiff did invent it and this claim is made moot.   If the PTO determines the opposite, then part of defendant's claim may be established in its favor for trial.

Defendant also brings a counterclaim for tortious interference with business relations. (*Id.* at p. 25-26.)   This, too, is dependent on the reexamination. Defendant asserts in its tortious interference allegation that plaintiff has falsely announced defendant's infringement, and that plaintiff misused an invalid patent in an attempt to gain market share.   (*Id.*)   Again, if plaintiff's patent is valid, then defendant has no claim for misusing an invalid patent for market share.   In addition, if the patent is invalid, then part of defendant's burden of proof in its tortious interference claim will already by established. Defendant's last claim of antitrust violation makes similar claims involving plaintiff's use of an invalid patent.   (*Id.*)   If the patent is invalid, that claim will be simplified in later litigation.   If the patent is valid, then this claim disappears.

As the Court has attempted to illustrate, the majority of this litigation depends on the validity or invalidity of patent '308. The litigation process also depends on the stability of the claims of the reexamined patent.   If the patent claims change, so does the Court's analysis.   In other words, even if this Court must address the validity of patent '307 and deal with other remaining issues, it will be a much easier task after the PTO has already dealt with these issues for '308.   "As noted by the Federal Circuit, reexamination may result in the elimination of most, if not all, of

18

the issues remaining in the pending litigation." *Datatreasury* at 754. *Gould v. Control Laser Corp.,* 705 F.2d 1340 (Fed. Cir. 1983), *cert. denied* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). The reexamination seems to have this potential here.

## V. **It is sufficiently early in the litigation to make a stay appropriate.**

The last factor that the Court considers is how much discovery has been completed and whether a trial date has been set. *Xerox Corp. v. 3COM Corp.*, 69 F. Supp. 2d 404 (W.D.N.Y. 1999). Here, a trial date has not been set, and although it is relatively late in discovery, both parties are looking to extend discovery for the addition of new defendants.

The parties recently exchanged their proposed constructions of claim terms as required by *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Although that event may suggest that the litigation has proceeded too far to grant a stay, other facts favor a stay here. Rather than expedite discovery, plaintiff actually seeks to delay it. (*See* Pl.'s Mot. to Am. [27]; Joint Discovery Plan [21] at pp. 10-11.) Plaintiff requested to extend discovery and claim construction to make room for the new defendants that plaintiff seeks to introduce to the litigation. (*Id.*) The Court has granted this request. *Supra* at pp. 3-5. Therefore, for all intents and purposes, discovery is still in the early stages because

19

the claim constructions are likely to change with the introduction of new defendants.

Plaintiff also argues that defendant delayed in seeking reexamination, and therefore must be seeking the stay as a dilatory tactic.  (Pl.'s Opp'n to Stay [74] at pp. 18-19.)  However, the Court does not find this to be true.  Defendant asserts that it was working to settle the litigation and not to further it.  However, when that failed, defendant sought the next appropriate remedy: reexamination.

In short, after considering the circumstances in this case, the Court finds a stay to be appropriate.  The Court sees no potential prejudice to the parties, and it is sufficiently early for a stay to be effective.  In addition, the Court prefers to deal with the issues once and for all without the possibility of its work being for naught as a result of a potential contrary finding by the PTO. Rather than proceed with a piecemeal approach, this Court will grant defendant's request and stay the litigation pending the PTO's reexamination of the patent.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's Motion for Leave to Amend [27] and **GRANTS** defendant's Motion to Stay the Proceedings [69].  The Clerk shall **ADMINISTRATIVELY TERMINATE** this action.  Either party may reopen the action within sixty (60) days

20

of a determination by the United States Patent and Trademark office.

SO ORDERED, this 19 day of February, 2008.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)